[No. 61021-0-I. Division One. October 13, 2008.]

DIRK YOW, *Respondent*, v. THE DEPARTMENT OF HEALTH UNLICENSED PRACTICE PROGRAM, *Appellant*.

808

810

*Robert M. McKenna, Attorney General,* and *Geoffrey W. Hymans, Assistant,* for appellant.

*Michael K. McCormack,* for respondent.

¶1 Cox, J. —The Department of Health appeals the superior court's order, which affirmed the Department's final order against Dirk Yow for the unlicensed practice of medicine except for the civil fine levied against him. We hold that the imposition of the $444,000 fine was not arbitrary and capricious.

¶2 Yow cross-appeals. We hold that the Department had statutory authority to use a health law judge to conduct the administrative hearing. The findings of fact that Yow challenges are supported by substantial evidence. Moreover, the findings support the legal conclusions, including the decision that Yow was engaged in the unlicensed practice of medicine. Yow fails in his burden to prove beyond a reasonable doubt that a portion of the statutory definition of the practice of medicine is unconstitutionally overbroad. Finally, the superior court did not abuse its discretion in striking evidence Yow first proffered during his appeal to that court. We affirm in part, reverse in part, and remand.

¶3 The Department began investigating Yow for the unlicensed practice of medicine after receiving a complaint from the son of an elderly man who had 163 colonic irrigation sessions with Yow in the 11 months before he died. Based on its investigation, the Department filed a Notice of Intent to Issue a Cease and Desist Order against Yow on March 16, 2006.

¶4 Yow requested an administrative hearing to contest the charges and filed an answer to the Department's allegations. A health law judge, appointed by the secretary of the Department, presided over the hearing.

¶5 Yow, several of his former patients and students, and an expert called by the Department testified at the hearing.

According to the witnesses, colonic irrigation is a procedure by which "about 15 gallons of water" are circulated through a person's colon over one to two hours. The "modified tap water" is pumped into the colon through the anus and rectum through the use of a six-inch long tube called a speculum, which can vary from "the circumference of a quarter to a half dollar." The speculum is inserted one to two inches inside the body. As "part of the whole procedure," Yow would provide various additives to the water that was circulated through the colon, including ozone, various herbs, coffee, and "micro flora and probiotics."

¶6 Yow testified that the benefits of colonic irrigation are "anecdotal" and that the purpose is based on "many theories," such as "colon hygiene." He admitted that he advertised colonic irrigation as providing "hydration, decongestion, [and] aerobic supplementation." Two articles authored by Yow and admitted into evidence show that he also offered his services to help with "prolapsed organs," "ballooned" or "spastic" colons, "diverticula," and constipation, among other things. Yow advertised himself as a "certified Hydrotherapist" and as an "intestinal hydropath."

¶7 Expert testimony by Stephen Rulyak, MD, revealed that colonic irrigation creates serious medical risks in recipients. The procedure creates a potential for colon perforation, which could result in bloodstream infection, as well as a risk of electrolyte shifts and cardiac arrhythmia.

¶8 Following the hearing, the health law judge entered his Corrected Findings of Fact, Conclusions of Law, and Final Order, concluding that Yow had engaged in the unlicensed practice of medicine. Based on evidence that Yow had engaged in the unauthorized practice of medicine for 37 months, averaging 12 work days per month, the Department imposed the statutory maximum fine of $1,000 per day, totaling $444,000. The health law judge also directed that Yow cease and desist his unlicensed practice of medicine.

¶9 Yow petitioned the King County Superior Court for judicial review pursuant to RCW 34.05.514. The superior

court affirmed the Department's final order in all respects except for the fine. The court struck the civil fine "as arbitrary and capricious under RCW 34.05.570(3)(i)" and concluded that "no fine is appropriate."

¶10 The Department appeals. Yow cross-appeals.

## PRESIDING OFFICER AT ADMINISTRATIVE HEARING

¶11 Yow argues that the Department's order was void ab initio because the Department lacked subject matter jurisdiction over his hearing. Specifically, he takes issue with the Department's use of "its own employee as the presiding officer," rather than assigning the case to the office of administrative hearings.

¶12 Yow improperly characterizes the question of the use of the health law judge as jurisdictional. It is not.

¶13 A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate.[1] A lack of subject matter jurisdiction implies that an agency has no authority to decide the claim at all, let alone order a particular kind of relief.[2] Any party may raise the issue of lack of subject matter jurisdiction at any time.[3] We review de novo a challenge to a tribunal's subject matter jurisdiction to hear a claim.[4]

¶14 The supreme court considered the meaning of subject matter jurisdiction in the context of agency adjudication in *Marley v. Department of Labor & Industries*.[5] In *Marley*, the Department of Labor and Industries deter-

---

[1] *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994).

[2] *Id.* at 539.

[3] RAP 2.5(a)(1); *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998).

[4] *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 71, 170 P.3d 10 (2007).

[5] 125 Wn.2d 533, 886 P.2d 189 (1994).

mined that Marley was not entitled to widow's benefits under her deceased husband's worker's compensation payments. Marley did not appeal this decision within the 60-day appeal period. Nearly seven years later, Marley attempted to appeal the decision, arguing that the decision was void and therefore not final and binding. The supreme court concluded that in order to show that an order is void, the party must show that the tribunal lacked jurisdiction over the party or the claim.[6] The court concluded that the Department had broad statutory authority for subject matter jurisdiction over workers' compensation claims.[7] The court refused to classify the Department's alleged errors of law as jurisdictional.[8]

¶15 Here, Yow characterizes the Department's choice of presiding officer at his hearing as an issue of subject matter jurisdiction. But his argument is more fairly characterized as an alleged error of statutory interpretation. Determinations regarding the unlicensed practice of medicine fall within the type of controversy over which the Department has jurisdiction and the authority to adjudicate.[9] Whether the Department's health law judge properly presided at the administrative hearing in this case is not a question of jurisdiction.

¶16 Despite Yow's contentions, the statutory scheme supports the Department's choice of presiding officer. The Department is correct in noting that the secretary has independent statutory authority to conduct adjudications for unlicensed practice. RCW 18.130.190(2) states, in part:

> The secretary [of health] may issue a notice of intention to issue a cease and desist order to any person whom the secretary has reason to believe is engaged in the unlicensed practice of a profession or business for which a license is required by the chapters specified in RCW 18.130.040.

---

[6] *Id.* at 539.

[7] *Id.*

[8] *Id.* at 542.

[9] *See* RCW 18.130.190.

The recipient of the notice may request a hearing to contest the charges.[10] The statute then provides that all proceedings shall be conducted in accordance with the Washington Administrative Procedure Act (APA), chapter 34.05 RCW.[11] Under the APA, "in the discretion of the agency head, the presiding officer in an administrative hearing shall be" the agency head, an administrative law judge from the office of administrative hearings, or, "[i]f the agency has statutory authority to do so, a person other than the agency head."[12] The Uniform Disciplinary Act (UDA), chapter 18.130 RCW, provides for such delegation by the secretary of health. The UDA defines "secretary" to mean "the secretary of health or the secretary's designee."[13] In short, the health law judge, as the secretary's designee, was authorized to preside at the adjudicative hearing here.

¶17 Furthermore, we agree with the Department's position that RCW 18.130.095(3) does not limit the secretary's authority with respect to unlicensed practice determinations.

## UNLICENSED PRACTICE OF MEDICINE

*Colonic Irrigation as Unlicensed Practice of Medicine*

¶18 Yow argues that the Department erred in concluding that his colonic irrigation practice constituted the practice of medicine. We disagree.

¶19 Judicial review of a final administrative decision is governed by the APA. In reviewing the decision, the court applies the standards of the APA directly to the administrative record before the agency.[14] Relief from an agency decision is granted when the agency has errone-

---

[10] RCW 18.130.190(2).

[11] *Id.*

[12] RCW 34.05.425(1)(b).

[13] RCW 18.130.020(10).

[14] *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

ously interpreted or applied the law, the order is not supported by substantial evidence, or it is arbitrary or capricious.[15]

¶20 We review findings of fact to determine whether they are supported by substantial evidence.[16] Substantial evidence has been defined as evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.[17] Unchallenged findings are verities on appeal.[18] The application of law to the facts is a question of law that we review de novo.[19]

¶21 No person may practice or represent himself or herself as practicing medicine without first having a license to do so.[20] A person practices medicine if, among other things, he or she:

(1) Offers or undertakes to diagnose, cure, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality;

. . . .

(4) Uses on cards, books, papers, signs or other written or printed means of giving information to the public, in the conduct of any occupation or profession pertaining to the diagnosis or treatment of human disease or conditions the designation "doctor of medicine", "physician", "surgeon", "m.d." or any combination thereof unless such designation additionally contains the description of another branch of the healing arts for which a person has a license . . . .[21]

---

[15] RCW 34.05.570(3)(d), (e), (i).

[16] RCW 34.05.570(3)(e).

[17] *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433 (1995).

[18] *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995).

[19] *Tapper*, 122 Wn.2d at 403.

[20] RCW 18.71.021.

[21] RCW 18.71.011.

Whether actions constitute the practice of medicine " 'is dependent upon the facts and not upon the name of the procedure, its origins, or legislative lack of clairvoyance.' "[22]

¶22 Yow has not expressly assigned error to any of the Department's findings of fact. He appears to challenge a portion of Finding of Fact 1.2, that he "diagnosed patients as suffering from congestion, constipation, dehydration, and prolapsed organs."

¶23 Substantial evidence supports the Department's finding. *Webster's Third New International Dictionary* defines "diagnose" as "to identify (as a disease or condition) by symptoms or distinguishing characteristics."[23] Department investigator Kozar testified that Yow said Kozar was "congested" when he went in for an initial appointment. Geneva Tillery, a former patient of Yow's, testified that Yow told her she "had a lot of congestion," and was "passing an excessive amount of lymph at one time," and that she "had a whole lot of adhesions." Yow told Tillery to "make sure [she] was going all the time because of adhesions," and if she was not having bowel movements, she should "get up here and get to me immediately" for colon irrigation. A former patient wrote an article about Yow, which stated, "Yow says almost all of his patients are chronically dehydrated and I was no exception," and that "when I first saw Dirk, he told me my transverse colon had prolapsed."

¶24 This evidence, together with the abundant inferences that one can make from Yow's literature in the administrative record, provides substantial evidence that Yow was identifying diseases or conditions by symptoms and other distinguishing characteristics. Though some of Yow's testimony at the hearing conflicted with the evidence

[22] *State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 166-67, 143 P.3d 618 (2006) (holding that a health center's practice of using electrodermal testing as an instrumentality to determine or "diagnose" medical conditions in a patient and recommending and selling specific remedies to that person to address those conditions are "practices that unquestionably fall within the valid police power the legislature exercised when it regulated the practice of medicine" (quoting *People v. Amber*, 76 Misc. 2d 267, 273, 349 N.Y.S.2d 604 (1973))).

[23] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 622 (1993).

above, the presiding officer at Yow's administrative hearing did not find his testimony credible. Credibility determinations are not subject to appellate review.[24]

¶25 Yow also appears to challenge Finding of Fact 1.6, which found that Yow signed a prescription for colonic irrigation equipment as "Dr. Yow."

¶26 Substantial evidence in the record supports this finding. Yow admitted to signing a prescription using the title "Dr." The recipient of the prescription also testified that Yow signed it as "Dr. Dirk Yow." Yow questions the admissibility of the evidence underlying this finding because it was hearsay. But RCW 34.05.452 governs the admissibility of evidence at APA adjudications and plainly permits the admission of hearsay evidence in the discretion of the presiding officer.[25] Yow's argument has no merit.

¶27 In arguing that colonic irrigation does not constitute a penetration of tissue, Yow also appears to challenge Findings of Fact 1.11 and 1.14. In Finding 1.11, the Department found that "[t]he procedure employed by [Yow] provides the potential for colon perforation, especially if the patient has certain diseases." This finding is supported by substantial evidence. Dr. Stephen Rulyak, an expert in gastrointestinal diseases and conditions, testified to the risk of colon perforation as a result of the irrigation procedures done by Yow.

¶28 In Finding 1.14, the Department found that "administering a colonic or conducting a digital rectal exam is an invasive procedure." Substantial evidence in the record supports this finding. Tillery testified that she saw Yow give a digital exam. When asked to explain what was involved in a digital exam, she said, "Well, you put on a pair of rubber gloves, client turns over on his side, and you put your index finger up their rectum." Yow showed investigator Kozar his

---

[24] *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[25] "Evidence, including hearsay evidence, is admissible if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452(1).

colonic irrigation equipment, including "a speculum, the part that goes into the rectum," which Yow said "wouldn't go all the way, only went so far." Patient Brad Martin explained that he "laid flat on [his] back" on a table for the procedure, "[a]nd then you just kind of roll over on your side, put one leg up a little bit, and he puts the speculum in." He further explained, "I was a little apprehensive at first, naturally, but really it was no big deal," and that after Yow inserted the speculum "there's a tube that comes through the [irrigation] machine that you can see what comes out of your colon, out of your body."

¶29 Yow also argues that the Department erred as a matter of law in concluding that colonic irrigation constitutes the unlicensed practice of medicine. We disagree.

¶30 Yow diagnosed patients as suffering from a number of diseases and conditions. He gave colonics to a patient to address chronic constipation. He conducted digital rectal exams for the purpose of determining the angle of the rectum and whether fissures exist. He professes that colonic irrigation will result in rehydration and will stimulate the liver to purge dead lymph, mucoid plaque, parasites, Candida die-off, and other accumulated toxins. He used herbs and ozone in colonic irrigations, and told one patient that the ozone "enhances the detoxification process." He routinely checked patients' abdomens to see how they felt.

¶31 Yow's procedures carry the potential for colon perforation, which could result in bloodstream infection. Yow's use of herbs in his patients' colons could cause side effects, such as difficulty breathing, and may result in allergic reactions. Colonic irrigation also creates a risk of electrolyte shifts and subsequent cardiac arrhythmia.

¶32 Finally, Yow signed his name as "Dr. Yow" on a prescription form for colonic irrigation equipment, which requires a physician's prescription.

¶33 We conclude that Yow's conduct constitutes the practice of medicine under RCW 18.71.011. The Findings of Fact demonstrate that Yow was offering or undertaking to

diagnose human ailments, infirmities, and conditions by the instrumentality of colonic irrigation. He also prescribed colonic irrigation for his patients' ailments and conditions. Though signing one's name as "Dr.," without more, may not constitute a violation of the plain language of the statute, Yow's signature as "Dr. Yow" in the context of a prescription form is sufficient to meet the definition of RCW 18.71.011(4).

¶34 Yow claims that his colonic irrigation practice is exempt from the Department's licensing scheme because it is a "self-care practice" under chapter 74.39 RCW. Yow's argument is unpersuasive. The chapter was intended to address the state's "chronically functionally disabled population."[26] The licensing exceptions for self-directed care apply only to those who aid adults with functional disabilities living in their own homes.[27] The record is clear that Yow's practices did not occur under these circumstances.

¶35 Yow asserts that the Department does not have authority to regulate colonic irrigation because it has not followed the procedures of chapter 18.120 RCW. We disagree. The express purpose of chapter 18.120 RCW is to establish guidelines for the regulation of health professions that were not licensed or regulated prior to July 24, 1983, and those licensed or regulated health professions that seek to substantially increase the scope of practice.[28] As a "colonic hydrotherapist," Yow seeks to substantially increase the scope of his practice to allow for an activity currently defined by the legislature as the practice of medicine. Chapter 18.120 RCW created a legislative scheme under which an individual, such as Yow, or any health professional group or organization, can propose a bill to substantially increase the scope of their practice.[29] But the fact that "colonic hydrotherapy" is not licensed or regulated as a

---

[26] RCW 74.39.001.

[27] RCW 74.39.050, .070.

[28] RCW 18.120.010(1).

[29] *See Gebbie v. Olson*, 65 Wn. App. 533, 539, 828 P.2d 1170 (1992).

health profession has no bearing on the Department's authority to regulate the unlicensed practice of medicine. Such statutory authority is clear.[30] Chapter 18.120 RCW does not apply here and does not preclude the Department from taking action against the unlicensed practice of medicine.

¶36 Yow claims that the Department does not have authority to regulate his colonic irrigation practice because it relied on a draft interpretive statement in adjudicating his case. This argument has no support in the record before us and we reject it.

¶37 The Department charged Yow with violating the statutes prohibiting the unlicensed practice of medicine, not with violating the terms of an agency interpretive statement. As we have explained, those charges were founded and fully supported by the record developed at the administrative hearing.

¶38 At oral argument of this case, Yow pointed to several documents in the record that he contends show that the Department took inconsistent positions in prosecuting its case against him for his unauthorized practice of medicine. We take this opportunity to explain why those documents do not support his argument.

¶39 The first document at issue is an August 11, 1996 memo regarding the unlicensed practice of colonic irrigation.[31] The memo describes the Department's concerns about colonic irrigation with respect to licensed health professions, and outlines possible departmental action regarding the practice. An assistant attorney general had recently advised the Department that colonic irrigation constitutes the practice of medicine and that unlicensed persons may not perform colonic irrigations. The memo plainly states the Department's position that unlicensed persons may not legally perform colonic irrigations.

---

[30] RCW 18.130.190; RCW 18.71.019.

[31] Clerk's Papers at 93-95.

¶40 The second document is a March 11, 1998 memorandum regarding a proposed interpretative statement on colonic irrigation.[32] Again, the memo demonstrates the Department's position that unlicensed persons are legally prohibited from performing colonic irrigations. The memo's discussion of a potential ambiguity relates only to individuals who have been improperly delegated colonic therapy duties by licensed health practitioners and individuals in licensed health professions where the procedure is beyond the scope of the licensed practice. Neither of these situations applies to Yow.

¶41 In short, the Department's actions in this case are entirely consistent with the substance of each of the memorandums on which Yow attempts to challenge the decision in this case. Yow's claims are without merit.

### Constitutional Arguments

¶42 Yow argues that the prohibition against advice on human conditions in RCW 18.71.011 is unconstitutionally overbroad on its face and unconstitutionally vague as applied to him. We disagree.

¶43 In general, "[a] person may not urge the unconstitutionality of a statute unless he is harmfully affected by the particular feature of the statute alleged to be violative of the constitution."[33] Moreover, "[o]ne who challenges the constitutionality of a statute must claim infringement of an interest particular and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the statute."[34]

¶44 A statute is presumed to be constitutional, and the party challenging its constitutionality bears

---

[32] Clerk's Papers at 96-101.

[33] *State v. Rowe*, 60 Wn.2d 797, 799, 376 P.2d 446 (1962).

[34] *Id.*

the burden of proving beyond a reasonable doubt its unconstitutionality.[35]

¶45 Under these rules, Yow does not have standing to challenge the advice on human conditions portion of RCW 18.71.011 as void for vagueness as applied to him. While the Department's initial notice to Yow cited subsections (1) and (4) of the statute in their entirety, the Department made its ultimate determination against Yow on grounds that he "diagnosed, prescribed, and treated patients by the use of colonics" and that he held himself out as a medical doctor.[36] Yow was not ordered to cease and desist conducting colonic irrigations based on "advising on the human condition." The portion of the statute he challenges as vague was not applied to him.

¶46 Washington courts have given more leeway to facial challenges based on overbreadth. Because of the importance of the rights protected by the First Amendment, "the overbreadth doctrine allows a litigant to challenge a statute on its face, rather than as applied to his own facts, and have a statute invalidated for overbreadth where it would be unconstitutional as applied to others even if not as applied to him."[37]

¶47 A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities.[38] The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is " 'substantially overbroad.' "[39] In determining overbreadth, " 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected con-

---

[35] *Madison v. State*, 161 Wn.2d 85, 92, 163 P.3d 757 (2007).

[36] Administrative R. at 248-49 (Conclusions of Law 2.5, 2.6).

[37] *State v. Motherwell*, 114 Wn.2d 353, 370-71, 788 P.2d 1066 (1990).

[38] *Id.* at 370 (quoting *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989)).

[39] *City of Bellevue v. Lorang*, 140 Wn.2d 19, 26, 992 P.2d 496 (2000) (internal quotation marks omitted) (quoting *Huff*, 111 Wn.2d at 925).

duct.' "[40] A statute may be saved from being facially invalid on overbreadth grounds where it has been or could be afforded a narrowing and limiting instruction by a court.[41]

¶48 Here, despite the fact that Yow was not prejudiced by the particular features of the statute that he challenges, we consider his overbreadth argument.

¶49 The constitutionality of RCW 18.71.011 has not yet been decided in Washington. In *State v. Pacific Health Center, Inc.*,[42] this court acknowledged the possibility of the statute's overbreadth without deciding the question:

> We acknowledge appellants' concern that the statute's plain language could allow the State to regulate many practices the legislature could not have intended to regulate, such as elementary school teachers instructing students on health and hygiene or a Pilates instructor advising a client to hold in her stomach to prevent lower back pain. But those situations are not before us.[43]

¶50 In *People v. Rogers*,[44] the Michigan Court of Appeals addressed an overbreadth challenge to a "practice of medicine" definition very similar to ours:

> " 'Practice of medicine' means the diagnosis, treatment, prevention, cure, or relieving of a **human** disease, ailment, defect, complaint, or other physical or mental **condition**, by attendance, **advice**, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts."[45]

In comparison, the challenged provision of RCW 18.71.011 reads:

---

[40] *Id.* at 26-27 (internal quotation marks omitted) (quoting *Huff*, 111 Wn.2d at 925).

[41] *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973).

[42] 135 Wn. App. 149, 143 P.3d 618 (2006).

[43] *Id.* at 166.

[44] 249 Mich. App. 77, 641 N.W.2d 595 (2001).

[45] *Id.* at 92 (emphasis added) (internal quotation marks omitted) (quoting MICH. COMP. LAWS § 333.17001(1)(d)).

A person is practicing medicine if he does one or more of the following:

(1) Offers or undertakes to diagnose, cure, **advise** or prescribe for any **human** disease, ailment, injury, infirmity, deformity, pain or other **condition**, physical or mental, real or imaginary, by any means or instrumentality.[46]

The *Rogers* court, relying on the principle that statutes may be saved from facial invalidity by judicial narrowing and limiting constructions, held that Michigan's statute was not overbroad.[47] The court looked to a 1915 Michigan Supreme Court case, *Locke v. Ionia Circuit Judge*, which recognized that the "sweeping" definition of the practice of medicine " 'would render criminal numerous gratuitous and humane acts of relief and kindness to the suffering common amongst mankind in all ages and places.' "[48] Yet the court in *Locke* recognized that " 'the police power of the State, though comprehensive, is scarce[ly] adequate to compass [sic] the possibilities of such a definition.' "[49] The Michigan Court of Appeals concluded that to the extent the statute, limited by judicial construction, "might reach constitutionally protected speech or conduct, the overbreadth is not substantial judged in relation to the plainly legitimate sweep of the statute."[50] Further, the court concluded, "[T]here is no realistic danger that the statute, so limited, will itself significantly compromise recognized First Amendment protections of parties not before the Court."[51]

¶51 Here, the only portion of Washington's definition of the practice of medicine that Yow challenges is the extracted phrase "[advise] on human conditions." The word

---

[46] RCW 18.71.011 (emphasis added).

[47] *Rogers*, 249 Mich. App. at 101.

[48] *Id.* at 98 (emphasis omitted) (quoting *Locke v. Ionia Circuit Judge*, 184 Mich. 535, 539, 151 N.W. 623 (1915)).

[49] *Id.* (quoting *Locke*, 184 Mich. at 539).

[50] *Id.* at 101 (citing *Broadrick*, 413 U.S. at 615-16).

[51] *Id.* (citing *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)).

"advise" arguably has the potential to bring constitutionally-protected free speech activities into the scope of the statute. As the court pointed out in *Pacific Health Center*, "advising" may include practices such as elementary school teachers instructing students on health and hygiene, or a Pilates instructor advising a client to hold in her stomach to prevent lower back pain.

¶52 Notably, the legislature has already limited RCW 18.71.011 in scope by RCW 18.71.030. That statute exempts religious practices, treatment by prayer, emergency medical assistance, and domestic administration of family remedies, among many others, from the prohibitions of chapter 18.71 RCW.[52]

¶53 To the extent that elementary school teachers instructing students on health and hygiene or Pilates instructors advising clients could be violating the practice of medicine statutes, the statute could be limited further to avoid the constitutional problem that Yow identifies here. But it is equally clear that Yow has not demonstrated that his concerns represent "substantial overbreadth" in relation to the plainly legitimate sweep of the statute. Yow has failed in his burden to prove beyond a reasonable doubt that the statute he challenges is unconstitutional.[53]

## EXCLUSION OF EVIDENCE AT SUPERIOR COURT

¶54 Yow contends that the superior court abused its discretion in striking new evidence he sought to admit on his appeal from the Department's order. We disagree.

¶55 The APA expressly limits judicial review of disputed issues of fact to the agency record, supplemented only in very limited circumstances.[54] RCW 34.05.562(1) provides the exception, allowing the court to take new evidence "only if it relates to the validity of the agency

---

[52] RCW 18.71.030.

[53] *Madison*, 161 Wn.2d at 92.

[54] RCW 34.05.558.

action at the time it was taken" and is needed to decide certain issues.

¶56 The evidence Yow sought to admit is from 2007. The Department entered its final order against Yow in December 2006. The evidence Yow sought to admit, which arose after the Department's final order, does not "relate to the validity of the agency action at the time it was taken." The trial court did not abuse its discretion in striking the evidence.

## CIVIL FINE

¶57 The Department argues that the trial court erred in striking the fine the Department levied against Yow as arbitrary and capricious. We agree.

¶58 As discussed above, RCW 18.130.190 sets out the procedure and authority by which the secretary of health or the secretary's designee can investigate and determine whether a person is engaged in the unlicensed practice of medicine.[55] Subsection (3) gives the secretary the authority to impose a civil fine "in an amount not exceeding one thousand dollars for each day upon which the person engaged in unlicensed practice" of medicine or other professions licensed by the Department.[56]

¶59 A court can reverse an agency order if the order is arbitrary or capricious.[57] Arbitrary and capricious action is " 'willful and unreasoning action, without consideration and in disregard of facts and circumstances.' "[58] Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous

---

[55] RCW 18.130.190, .020(10).

[56] RCW 18.130.190.

[57] RCW 34.05.570(3)(i).

[58] *Heinmiller*, 127 Wn.2d at 609 (quoting *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

conclusion has been reached.[59] Action taken after giving a party ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not arbitrary or capricious.[60] Harshness is not the test for arbitrary and capricious action.[61]

¶60 The health law judge calculated the fine against Yow in accordance with RCW 18.130.190(3), in the statutory amount of $1,000 per day for each day that Yow engaged in the unlicensed practice of medicine during the charging period. The Health Law Judge ordered Yow to pay $444,000 for working an average of 12 days per month (three days per week) for 37 of the 38 months in the charging period, a conservative estimate.

¶61 In *Heinmiller v. Department of Health*,[62] the supreme court found that sanctions imposed against a social worker were not the result of willful and unreasoning action where Heinmiller was given a fair hearing at which the facts were considered and she had an opportunity to present her arguments. For the same reasons, the Department's fine against Yow must be reinstated. Yow was given a fair hearing at which the facts were considered, and he had an opportunity to present his argument.

¶62 Moreover, the Department's order makes plain that the fine was the result of reasoned consideration. The health law judge noted the aggravating factors in Yow's case of "multiple occurrences, vulnerability of patients (children and senior citizens), and medical risk to patients." The health law judge noted the mitigating factor that no evidence indicated that any patient suffered physical harm. Because Yow refused to testify as to the number of days upon which he had conducted colonic irrigations, the health

---

[59] *Id.*

[60] *Id.* at 609-10.

[61] *Id.* at 609.

[62] 127 Wn.2d 595, 610, 903 P.2d 433 (1995).

law judge adopted the Unlicensed Practice Program's fairly conservative estimate that Yow saw patients only three days per week, and that he took one month off from practice during the charging period.

¶63 Yow asserts that the rule of lenity should apply to his sanctions because the Department's proceeding was "quasi-criminal" and the "legislative/regulatory scheme attendant with [colonic hydrotherapy]" is ambiguous. We reject this argument. Yow has not demonstrated any ambiguities in RCW 18.71.011 or 18.130.190. The rule of lenity applies only where a statute is ambiguous.[63]

## ATTORNEY FEES

¶64 Yow claims that the trial court erred in denying his tardy request for attorney fees under RCW 4.84.350(1). He also requests attorney fees under the same statute on appeal. We deny his requests.

¶65 RCW 4.84.350, known as the "Equal Access to Justice Act," provides authority for petitioners to recover attorney fees from a state agency for successful court challenges to the agency's action. Because Yow is not a prevailing party, here or below, an award of fees to Yow is not warranted.

¶66 Moreover, Yow's petition for attorney fees at superior court was untimely under CR 54(d)(2).

¶67 We affirm in part, reverse in part, and remand with instructions to reinstate the $444,000 civil fine that the Department imposed.

BECKER and ELLINGTON, JJ., concur.

Review denied at 166 Wn.2d 1012 (2009).

---

[63] *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005).