# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VISION RESEARCH GROUP, LLC, a Washington limited liability company, | No. 55576-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE LIQUOR and CANNABIS BOARD, an agency of the State of Washington, | |
| Appellant. | |

WORSWICK, J. — The Washington State Liquor and Cannabis Board (WSLCB)[1] appeals the trial court's findings of fact, conclusions of law and order reversing the Board's amended final order (Amended Final Order) that had cancelled Vision Research Group's (VRG) Priority 1 application for a marijuana retail license. The WSLCB had withdrawn VRG's Priority 1 application after the legislature repealed the priority system, a method for processing license applications.[2] VRG appealed, and ultimately the WSLCB issued an Amended Final Order affirming the withdrawal of VRG's application. VRG sought judicial review, and the superior court reversed the Board's Amended Final Order.

---

[1] We refer to the appellate body of the Washington State Liquor and Cannabis Board as the "Board," and otherwise refer to the Washington State Liquor and Cannabis Board as "WSLCB."

[2] The WSLCB asserts that this administrative withdrawal was the functional equivalent of the agency cancelling those applications under WAC 314-55-050.

The WSLCB appeals the superior court's order. The WSLCB argues that VRG's case is moot. VRG argues that the WSLCB exceeded its statutory authority by refusing to evaluate VRG's license application, and that the WSLCB had no basis to withdraw VRG's application.[3] We hold that the case is not moot. We further hold that the WSLCB did not exceed its statutory authority when it withdrew VRG's application.

## FACTS

### I. THE PRIORITY SYSTEM AND VRG'S APPLICATION

After Washington voters approved Initiative 502 legalizing recreational marijuana in the state in 2012, the WSLCB began issuing marijuana retail licenses to vendors using a lottery system. Former WAC 314-55-081 (2013). In 2015, the legislature implemented former RCW 69.50.331(1)(a) (2015), which required the WSLCB to implement a priority system and assign Priority 1, 2, or 3 status to applications for the new licenses. The WSLCB created rules implementing the priority system to specify the criteria for applicants, and then sorted the applications into one of the priority levels. Former WAC 314-55-020 (2015).

The WSLCB processed applications for licensure in order of priority and by date of application submission. Former WAC 314-55-020(3). Thus, Priority 1 applications were more likely to result in a license because the agency processed them first. *See Top Cat Enters., LLC v. City of Arlington*, 11 Wn. App. 2d 754, 756, 455 P.3d 225 (2020). Receiving Priority 1 status did not guarantee licensure; it merely determined the priority for processing. Former RCW 69.50.331. In 2015, the WSLCB also increased the number of available licenses by 222, changing the maximum number of retail licenses from 334 to 556.

---

[3] Although the WSLCB is the appellant, VRG bears the burden of proving the invalidity of the Board's decision. RCW 34.05.570(1)(a).

Following implementation of the priority system, the WSLCB opened a window period from October 12, 2015 to March 31, 2016 for applicants to submit license applications for the 222 available licenses. VRG submitted its application on March 29, two days before the deadline. The WSLCB received 2,340 applications for 222 available licenses. Of those applications, 290 qualified as Priority 1, including VRG's application. The WSLCB processed the applications according to their priority and the order they were received and all 222 available licenses were issued without the WSLCB reaching VRG's application. The remaining Priority 1 applications, including VRG's application, were put on hold.

In 2017, the legislature repealed the priority system under which VRG had submitted its application. LAWS OF 2017, ch. 317, § 2, at 1316-17. Although the legislature amended RCW 50.69.331 to repeal the priority system, it left intact subsection (1) which states "the [WSLCB] must conduct a comprehensive, fair, and impartial evaluation of the applications timely received." RCW 69.50.331(1). In fact, the repeal of the priority system left RCW 69.50.331 with language identical to what it contained when the statute was first enacted with the exception of adding subsections (1) and (8). *Compare* RCW 69.50.331 *with* former RCW 69.50.331 (2012).

In 2019 and in response to the legislature's repeal of the priority system, the WSLCB withdrew all pending Priority 1 applications submitted during the 2015-16 application window, including VRG's. The WSLCB issued a "Statement of Intent to Withdraw Priority 1 Marijuana Retailer Application," asserting that all remaining Priority 1 applications would be withdrawn because all "additional allotments have been filled." Administrative Record (AR) at 183. The WSLCB relied on the following authority to support its decision to withdraw applications:

3

- RCW 69.50.331(1), which stated that the "[WSLCB] must conduct a comprehensive, fair, and impartial evaluation of the applications timely received." Clerk's Papers (CP) at 98.

- RCW 69.50.345(1), which provided that the WSLCB "must adopt rules that establish the procedures and criteria necessary . . . [for] [L]icensing." CP at 98.

- WAC 314-55-050(17), which provided that the WSLCB may "deny, suspend, or cancel a marijuana license application or license" if it "determines the issuance of the license will not be in the best interest of the welfare, health, or safety of the people." CP at 98.

Sometime after the close of the 2015-16 application window, a number of marijuana licensees relinquished their licenses to the WSLCB by going out of business or having their licenses revoked for various reasons. Thus, the number of licensed marijuana retailers fell below the cap of 556 and continues to be below that number as of the time of this appeal. Since the close of the 2015-16 window, the WSLCB has not issued additional licenses because it determined that doing so would not be "in the best interest of the welfare, health, or safety of the people in the state." CP at 98.

VRG appealed the "Statement of Intent to Withdraw Priority 1 Marijuana Retailer License," and the matter was heard by an administrative law judge (ALJ) at the Office of Administrative Hearings. AR at 387. The parties filed cross-motions for summary judgment, and the ALJ granted VRG's summary judgment motion, reversed the WSLCB's "Statement of Intent to Withdraw Priority 1 Marijuana Retailer License," and ordered the WSLCB to maintain VRG's application as pending.

The WSLCB filed a petition for review with the Board. The Board issued a final order affirming the ALJ's initial order. However, two days later, the Board amended its Final Order and reversed the ALJ's order, granting the Board's motion for summary judgment, and concluding that "the [WSLCB] conducted a comprehensive, fair, and impartial evaluation of

4

VRG's license application, which is apparent because VRG's application was awarded Priority 1."[4]  AR at 390.  The Board also found that the WSLCB "issued all of the available licenses to applicants prior to VRG; thus, there were no more licenses available to be issued to VRG."  AR at 390.  Thus, the Board affirmed the Statement of Intent to Withdraw Priority 1 Marijuana Retailer License.

## II. THE SOCIAL EQUITY PROGRAM

In 2020 and while VRG's judicial review was pending in superior court, the legislature enacted the Marijuana Social Equity Program, a program intended to

> promote business ownership among individuals who have been disproportionately impacted by the war on drugs, in order to remedy the harms resulting from the enforcement of cannabis-related laws. [And] to center the voices of Black, Indigenous, and People of Color communities that have been most impacted by enforcement of cannabis-related laws.[5]

*See* LAWS OF 2020, ch. 236, § 1.

The statute provides that beginning December 1, 2020, the WSLCB "may" issue social equity applicants those retail licenses "that have been subject to forfeiture, revocation, or cancellation," or that "were not previously issued by the [WSLCB] but could have been issued without exceeding the limit."  RCW 69.50.335(1).  The WSLCB may deny an application by an applicant if "[t]he application does not meet Social Equity goals or does not meet Social Equity plan requirements."  RCW 69.50.335(3)(b)(i).  The legislature did not establish criteria under which social equity applicants would be evaluated, but it created a task force to make

---

[4] It is unclear from the record why the Board amended its final order, but the Board's briefing below claims it was "Board Staff Error."  CP at 133.

[5] Governor's Interagency Council on Health Disparities, *The Council's Work*, https://healthequity.wa.gov/councils-work/social-equity-cannabis-task-force.

recommendations to the WSLCB by December 2022 regarding factors the WSLCB should consider in distributing licenses under this program. RCW 69.50.336(9).

The WSLCB is not currently accepting marijuana retail license applications because it is waiting for the task force to issue its recommendations. Once the task force provides the WSLCB with its recommendations, the WSLCB will create an application process and develop rules regarding how the program will be implemented.[6]

VRG appealed to Thurston County Superior Court, and the trial court reversed the Board's Amended Final Order. The WSLCB appeals.

ANALYSIS

I. Mootness

The WSLCB argues that we should dismiss this case as moot for two reasons. First, the legislature repealed the priority system under which VRG applied for a license, making VRG's requested relief meaningless. Second, the legislature's adoption of E2SHB 2870, permitting the issuance of marijuana retail licenses under the Social Equity Program, supersedes the abolished priority system. In other words, the WSLCB argues that regardless of its decision to withdraw applications submitted under the priority system, it is no longer able to process VRG's application, thus VRG's case is moot. VRG is seeking relief through an order that maintains its application as pending to be evaluated under the criteria applied at the time the WSLCB withdrew its application. We hold that VRG's appeal is not moot.

"'A case is technically moot if the court cannot provide the basic relief originally sought'" or "'can no longer provide effective relief.'" *Dioxin/Organochlorine Ctr. v. Pollution*

---

[6] *See Wash. Liquor & Cannabis Bd., Cannabis Licensing*, https://lcb.wa.gov/mjlicense/ cannabis-licensing (last visited on 02/11/2022).

*Control Hr'gs Bd.*, 131 Wn.2d 345, 350, 932 P.2d 158 (1997) (quoting *Snohomish County v. State,* 69 Wn. App. 655, 660, 850 P.2d 546 (1993)). If the relief available would be meaningless, the case is moot. *See SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 603, 229 P.3d 774 (2010).[7] "'The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *City of Sequim v. Malkasian*, 157 Wn.2d 251, 259, 138 P.3d 943 (2006) (quoting 13A C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3, at 261 (2d ed. 1984)).

A.      *Relevant Statutes*

Under the priority system, former RCW 69.50.331(1) stated that "for the purpose of considering any application for a license . . . the state liquor and cannabis board must conduct a comprehensive, fair, and impartial evaluation of the applications timely received." Subsection (a) described that the WSLCB "must develop a competitive, merit-based application process that includes, at a minimum, the opportunity for an applicant to demonstrate experience and qualifications in the marijuana industry." Former RCW 69.50.331(1)(a). It also stated that the WSLCB must give preference between competing applications in the licensing process to applicants based on their experience—for example, Priority 1 was awarded to applicants that demonstrated extensive experience, and Priorities 2 and 3 were awarded to applicants with little to no experience. Former RCW 69.50.331(1)(a).

If an application was granted Priority 1, it was more likely to receive a license because it guarantees earlier processing, but it does not guarantee licensure. *See*, *e.g.*, *Top Cat Enters.,*

---

[7] Neither party argues this case presents a continuing and substantial issue of public interest. *State v. Hunley*, 175 Wn.2d 901, 906, 287 P.3d 584 (2012).

11 Wn. App. 2d at 756 (Priority 1 applicant denied licensure because he failed to meet additional regulatory requirement that there be a 1,000 feet separation between property lines of licensees' businesses or buildings and restricted entities). After an applicant was assigned priority based on criteria set in former RCW 69.50.331(1)(a), the application must then meet a set of regulatory requirements before the applicant was granted licensure. RCW 69.50.331(8); WAC 314-55-020(4) ("All marijuana license applicants must meet the qualifications required by the WSLCB before they will be granted a license."). RCW 69.50.331(8) outlines requirements regarding where a marijuana retail may not be conduct its operations. For example, it states that the WSLCB "may not issue a license for any premises within one thousand feet of the perimeter of the grounds of any elementary or secondary school, playground, recreation center or facility, child care center, public park, public transit center, or library, or any game arcade admission to which is not restricted to persons aged twenty-one years or older." RCW 69.50.331(8)(a). In addition, WAC 314-55-020 conditions licensure on various additional factors.

The priority system was repealed in 2017, with no additional amendments instructing the WSLCB on whether it should continue evaluating applications, and if so, under which criteria. LAWS OF 2017, ch. 317 § 2, at 1317. Despite the repeal of the priority system, the legislature left intact the requirement that the WSLCB "must conduct a comprehensive, fair, and impartial evaluation of the applications timely received." *See* LAWS OF 2017, ch. 317 § 2, at 1317; RCW 69.50.331(1). It also maintained licensure criteria under RCW 69.50.331(8). And, WAC 314-55-020 has not been repealed or amended by the WSLCB.

In 2020, the legislature enacted the Social Equity Program. The legislature described the program as "allowing *additional* marijuana retail licenses for social equity purposes." LAWS OF

2020, ch. 236, at 1 (emphasis added).[8] The legislature stated that the purpose of the program was to "remedy[] harms resulting from the enforcement of cannabis-related laws in disproportionately impacted areas" and that "creating a social equity program will further an equitable cannabis industry by promoting business ownership among individuals who have resided in areas of high poverty and high enforcement of cannabis-related laws." LAWS OF 2020, ch. 236 § 1, at 2. In addition, the legislature stated the following: "It is the intent of the legislature that implementation of the social equity program authorized by this act not result in an increase in the number of marijuana retailer licenses above the limit on the number of marijuana retailer licenses in the state established by the [WSLCB] before January 1, 2020." LAWS OF 2020, ch. 236 § 1, at 3.

RCW 69.50.335 provides rules for social equity applicants, and it states

(1) Beginning December 1, 2020, and until July 1, 2029, cannabis retailer licenses that have been subject to forfeiture, revocation, or cancellation by the [WSLCB], or cannabis retailer licenses that were not previously issued by the [WSLCB] but could have been issued without exceeding the limit on the statewide number of cannabis retailer licenses established before January 1, 2020, by the [WSLCB], may be issued or reissued to an applicant who meets the cannabis retailer license requirements of this chapter.

(2)(a) In order to be considered for a retail license under subsection (1) of this section, an applicant must be a social equity applicant and submit a social equity plan along with other cannabis retailer license application requirements to the [WSLCB]. . . .

. . . .

(3)(a) In determining the issuance of a license among applicants, the [WSLCB] may prioritize applicants based on the extent to which the application addresses the components of the social equity plan.

---

[8] The WSLCB acknowledged that the Social Equity Program creates a "new cannabis license type." *See e.g., Wash. Liquor & Cannabis Bd., Cannabis Licensing¸* https://lcb.wa.gov/se/social-equity-task-force (last visited on 02/12/2022).

(b) The [WSLCB] may deny any application submitted under this subsection if the [WSLCB] determines that:

(i) The application does not meet social equity goals or does not meet social equity plan requirements; or

(ii) The application does not otherwise meet the licensing requirements of this chapter.

A "social equity applicant" means

(i) An applicant who has at least fifty-one percent ownership and control by one or more individuals who have resided in a disproportionately impacted area for a period of time defined in rule by the [WSLCB] after consultation with the commission on African American affairs and other commissions, agencies, and community members as determined by the [WSLCB];

(ii) An applicant who has at least fifty-one percent ownership and control by at least one individual who has been convicted of a cannabis offense, a drug offense, or is a family member of such an individual; or

(iii) An applicant who meets criteria defined in rule by the [WSLCB] after consultation with the commission on African American affairs and other commissions, agencies, and community members as determined by the [WSLCB].

RCW 69.50.335(6)(c). And, RCW 69.50.325(3)(d) provides that "The [WSLCB] *may* issue marijuana retailer licenses pursuant to [Chapter 69.50] and RCW 69.50.335." (emphasis added).

B.    *VRG's Requested Relief Is Not Meaningless*

The WSLCB argues that this appeal is moot because VRG's requested relief is meaningless. We disagree.

The WSLCB assigned VRG's application Priority 1 before the repeal of the priority system. LAWS OF 2017, ch. 317, § 2. The priority system simply gave VRG's application priority among a pool of applicants. Former RCW 69.50.331. VRG was in a queue to be evaluated under general licensure criteria still in effect as of the time of this appeal. *See e.g.,* RCW 50.69.331(8); WAC 314-55-020. When the legislature repealed the priority system, it was

10

silent on whether the WSLCB was authorized to withdraw or cancel all pending applications prior to processing, and it did not state that no application could be evaluated under the WAC 314-55-020 or RCW 69.50.331(8)'s criteria. LAWS OF 2017, ch. 317, § 2. The legislature simply repealed the *order* in which the WSLCB should review applications, not *how* or *whether* the applications should be reviewed. LAWS OF 2017, ch. 317, § 2. In addition, for the years following the repeal of the priority system but prior to the enactment of the Social Equity Program, the legislature maintained the requirement that the WSLCB must conduct a "comprehensive, fair, and impartial evaluation of the applications timely received." RCW 69.50.331(1).

Although the order of priority was repealed by the legislature, the criteria for evaluating and issuing licenses remains the same. Thus, maintaining VRG's application would allow it to be considered under criteria that was in place when the WSLCB withdrew VRG's application, though not necessarily in the same order of priority. *See, e.g.,* RCW 69.50.331(8); WAC 314-55-020. It may be that VRG's "placement" in the queue is affected by the repeal of the priority system. RCW 69.50.335(3)(a). However, we cannot determine that the new criteria would render VRG's pending application meaningless because the WSLCB has not yet adopted new criteria, and we have no information on the number of social equity applicants or the number of retail licenses WSLCB will issue. Therefore, based on the current criteria in RCW 69.50.331(8) and WAC 314-55-020, allowing VRG's application to remain pending would not be meaningless.

C.     *The Social Equity Program Does Not Render This Appeal Moot*

The WSLCB next argues that this appeal is moot because legislation mandates that future retail marijuana licenses may be issued only under the Social Equity Program. The WSLCB

contends that the enactment of the Social Equity Program necessarily forecloses the possibility of issuing licensing under any other criteria. We disagree because the Social Equity Program is permissive, and the program does not restrict licensure to only social equity applicants—it creates a new, additional class of applicants.

The Social Equity Program allows for a new type of licensure, but it does not bar other types of applicants and licenses. The Social Equity Program permits, but does not mandate, the WSLCB to issue or prioritize licenses to social equity applicants. RCW 69.50.325(3)(d); RCW 69.50.335(3)(a). Specifically, RCW 69.50.335(1) states that the WSLCB "may" issue licenses under the Social Equity Program. Similarly, RCW 69.50.325(d) provides that "The [WSLCB] *may* issue marijuana retailer licenses pursuant to [Chapter 69.50] and RCW 69.50.335." (emphasis added). The legislature described the program as "allowing *additional* marijuana retail licenses for social equity purposes." LAWS OF 2020, ch. 236, at 1 (emphasis added). The WSLCB does not point to authority stating that the Social Equity Program *requires* the WSLCB to process only social equity applicants nor can we point to such authority.

The WSLCB also mischaracterizes VRG's argument by stating that "VRG seeks a ruling that would require the WSLCB to prioritize its defunct application over future applicants under the Social Equity Program." Br. of Appellant at 22. But that is not what VRG is seeking; instead, VRG is asking us to "evaluate [its application] for compliance with applicable criteria." Br. of Resp't at 26. As established, the criteria used to evaluate applications after they have been assigned priority is still in effect as of the time of this appeal, and no authority restricts the WSLCB from evaluating applications or issuing licenses in compliance with that criteria. *See, e.g.,* RCW 69.50.331(8); WAC 314-55-020.

Because VRG's requested relief is not meaningless, and because the Social Equity

Program is not the sole method by which the WSLCB is authorized to issue licenses, we hold

that this appeal is not moot.

II. VALIDITY OF THE WSLCB's DECISION TO WITHDRAW VRG's APPLICATION

A.      *Standard of Review and Legal Principles*

The Administrative Procedure Act (APA) governs review of agency action. RCW

34.05.570. We sit in the same position as the superior court and review the Board's decision in

light of the administrative record. *Foster v. Dep't of Ecology*, 184 Wn.2d 465, 471, 362 P.3d

959 (2015). We "review only the board's decision, not the ALJ's decision or the superior court's

ruling." *Marcum v. Dep't of Soc. & Health Servs.*, 172 Wn. App. 546, 559, 290 P.3d 1045

(2012).

The party asserting the invalidity of the agency's action bears the burden of proof. RCW

34.05.570(1)(a). We grant relief if the agency's decision contains any of the following:

> (b) The order is outside the statutory authority or jurisdiction of the agency
> conferred by any provision of law;
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed
> in light of the whole record before the court, which includes the agency record for
> judicial review, supplemented by any additional evidence received by the court
> under this chapter;
>
> . . . .
>
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3)(b), (d)-(e), (i). We review an agency's conclusion challenged under RCW

34.05.570(3)(b)-(d) de novo. *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d

13

144, 155, 256 P.3d 1193 (2011).  And, challenges under RCW 34.05.570(3)(i) are reviewed to determine whether the decision constitutes "'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'"  *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46-47, 959 P.2d 1091 (1998) (quoting *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)).[9]

A motion for summary judgment is a question of law reviewed de novo.  *Osborn v. Mason County*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006).  Where the original administrative action was decided on summary judgment, the reviewing court "must overlay the APA standard of review with the summary judgment standard."  *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008).

B.       *The WSLCB's Statutory Authority*

VRG argues that the WSLCB acted beyond its statutory authority by refusing to evaluate its application it as required by RCW 69.50.331(1).  We disagree.

1.        *Comprehensive, Fair, and Impartial Evaluation*

As an initial matter, the parties disagree about the meaning of a "comprehensive, fair, and impartial evaluation," and whether this language requires the WSLCB to simply determine the level of an application's priority or if it requires the WSLCB to process the application and determine its eligibility based on the merits.  RCW 69.50.331(1).  In order to

---

[9] The parties also argue whether the Board's decision was supported by substantial evidence. RCW 34.05.570(3)(e).  But the substantial evidence standard is not appropriate when evaluating motions for summary judgment, so we do not address these arguments.  *Verizon*, 164 Wn.2d at 916 n.4;  *City of Union Gap v. Dep't of Ecology*, 148 Wn. App. 519, 525-26, 195 P.3d 580 (2008)

determine whether the WSLCB complied with their statutory authority to "conduct a comprehensive, fair, and impartial evaluation of the applications timely received," we first consider the WSLCB's obligation to evaluate an application under RCW 69.50.331(1).

To ascertain the meaning of a statute, we first examine the statute's language. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). When interpreting statutory language, our fundamental objective is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). To determine a statute's plain meaning, we examine the language of the statute, as well as other provisions of the same act, taking into account "'the statutory context, basic rules of grammar, and any special usages stated by the legislature on the face of the statute.'" *Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 11-12 (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)).

When the plain language is unambiguous—that is, when the statutory language admits of only one meaning—the legislative intent is apparent, we give effect to the statute's plain meaning. *Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 9-10. We also avoid a "'literal reading of a statute which would result in unlikely, absurd, or strained consequences.'" *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011) (quoting *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)). This court may not insert or remove statutory language—it is a task that is decidedly the province of the legislature. *Five Corners Family Farmers*, 173 Wn.2d at 311.

RCW 69.50.331(1) states that

> For the purpose of considering any application for a license to produce, process, research, transport, or deliver marijuana, useable marijuana, marijuana concentrates, or marijuana-infused products subject to the regulations established

15

> under RCW 69.50.385, or sell marijuana . . . the [WSLCB] must conduct a comprehensive, fair, and impartial evaluation of the applications timely received.

And, subsection (2)(a) provides that

> The [WSLCB] may, in its discretion, subject to RCW 43.05.160, 69.50.563, 69.50.562, 69.50.334, and 69.50.342(3) suspend or cancel any *license*; and all protections of the licensee from criminal or civil sanctions under state law for producing, processing, researching, or selling marijuana, marijuana concentrates, useable marijuana, or marijuana-infused products thereunder must be suspended or terminated, as the case may be.

(emphasis added).[10]

We hold that RCW 69.50.331(1) is unambiguous. Subsection (1) requires a "comprehensive, fair, and impartial evaluation" of applications timely received. Subsequent to being assigned an application a priority tier, formal processing of the application requires an applicant to submit a security deposit as well as extensive documentation of various requirements, such as proof of a lease and proof of compliance with the State's traceability requirements, among other things.[11] The plain language of the statute does not require any investigation beyond the initial evaluation of all timely applications—under the Priority System, a timely evaluation included only an evaluation sufficient to assign a priority tier to each application.

---

[10] The statutes name various circumstances when a Board may cancel a license. RCW 43.05.160 permits the Board to issue a notice of correction when the licensee is not in compliance with the license conditions. Similarly, RCW 69.50.593 permits the Board to issue a civil penalty without notice in certain circumstances; RCW 69.50.562 and RCW 69.50.342(3) outline various guidelines the Board must follow when structuring a licensee compliance program; and, RCW 69.50.334 requires the Board to conduct a hearing before revoking or denying the reissuance of a license.

[11] Wash. Court of Appeals oral argument, *Vision Research Group, LLC. v. Wash. State Liquor Cannabis Board*, No. 555760 (Mar. 8, 2022), at 10 min., 20 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

No. 55576-0-II

VRG interprets RCW 69.50.331(1) to require investigation sufficient to determine whether VRG should be awarded an application. However, the legislature could not have intended to require the WSLCB to collect such extensive data from all 2,340 timely applicants to determine their eligibility despite there being only 222 available licenses because formal processing of the application requires an applicant to submit a security deposit, proof of a lease and proof of compliance with the State's traceability requirements, and other requirements.

We cannot interpret RCW 69.50.331(1) as requiring the WSLCB to conduct formal processing of over 2,000 applications. Doing so would place a heavy burden on both the WSLCB and all applicants. It is absurd to conclude that each applicant needs a compliant lease, a security deposit, and other requirements when only a few applicants have a chance of being granted an application. RCW 69.50.331(1) requires the WSLCB to evaluate only each application fairly and impartially, and it did so in compliance with RCW 69.50.331(1). (The WSLCB evaluated VRG's application in so far as to determine the tier of priority). As mentioned in oral argument, the next step after assigning priority was submission of extensive documentation such as proof of a lease.[12]

Because RCW 69.50.331(1) requires the WSLCB only to evaluate an application comprehensive, fairly, and impartially without additional investigation, the WSLCB acted in compliance with subsection (1) when it evaluated VRG's application to determine its priority. Therefore, the WSLCB acted within its statutory authority under RCW 69.50.331(1).

---

[12] Wash. Court of Appeals oral argument, *Vision Research Group, LLC. v. Wash. State Liquor Cannabis Board*, No. 555760 (Mar. 8, 2022), at 10 min., 20 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

17

2.      *The WSLCB's Basis for Withdrawing VRG's Application*

VRG also argues that the WSLCB's reason for withdrawing VRG's application was unfounded. We disagree.[13]

The WSLCB enacted WAC 314-55-050, which states that "the WSLCB has broad discretionary authority to approve or deny a marijuana license application for reasons including, *but not limited to*, the following: . . . [if] [t]he WSLCB determines the issuance of the license will not be in the best interest of the welfare, health, or safety of the people of the state." WAC 314-55-050 (17).

The plain language of WAC 314-55-050 states that the WSLCB has "broad authority" to withdraw a license for a list of reasons, including any reason affecting "the welfare, health, or safety of the people of the state." WAC 314-55-050 (17). *See Campbell & Gwinn, L.L.C.*, 146 Wn.2d at 9-10 (when the plain language is unambiguous, courts give effect to the statute's plain meaning). Also, the WSLCB has authority to determine the number of licenses it may issue. RCW 69.50.354.

Here, the WSLCB's "Statement of Intent to Withdraw Priority 1 Marijuana Retailer Application" cited WAC 314-55-050(17) as a source of authority upon which it relied for cancelling VRG's application. CP at 97-98. Moreover, the WSLCB explained that it had

---

[13] VRG does not argue that WAC 314-55-050 does not grant the WSLCB broad authority to cancel a license application for any reason it deems appropriate. Instead, it argues that the reasons supplied by the WSLCB in the "Statement of Intent to Withdraw Priority 1 Marijuana Retailer Application" do not fall under subsection (17). However, the WSLCB is not confined to the reasons listed in WAC 314-55-050. WAC 314-55-050 includes a list of non-exhaustive reasons why the WSLCB may cancel an application, but the reasons for cancelling an application may not fall into any of the supplied reasons, as is the case here.

determined that the issuance of the license would not be in the best interest of the welfare, health, or safety of the people of the state.

By the time the WSLCB withdrew VRG's application the legislature had repealed the priority system under which VRG submitted its application. The application period had closed, and WSLCB had issued all the retail licenses it intended to issue. In addition, the WSLCB ceased accepting any additional licenses pending for the task force's recommendations about upcoming licensure criteria and application process.[14] The WSLCB cancelled *all* pending applications, apparently without consideration or discrimination. Under these facts, WSLCB correctly exercised its broad authority to withdraw VRG's application.

VRG also argues that the WSLCB "Statement of Intent to Withdraw Priority 1 Marijuana Retailer Application" was based on a false statement that all additional allotments have been filled. It argues that we should review the letter under the substantial evidence standard pursuant to RCW 34.05.570(3)(e), which states that "[t]he *order* is not supported by evidence that is substantial." (emphasis added). RCW 34.05.570 applies to review of an agency's *order* not an agency's *action*. Therefore, we do not review the WSLCB's "Statement of Intent to Withdraw Priority 1 Marijuana Retailer Application" for substantial evidence, we review the Board's Amended Final Order instead. And, because we review summary judgments de novo, the substantial evidence standard is not appropriate when evaluating motions for summary judgment. *City of Union Gap v. Dep't of Ecology*, 148 Wn. App. 519, 525-26, 195 P.3d 580 (2008). Therefore, we do not address this issue.

---

[14] *See Wash. Liquor & Cannabis Bd., Cannabis Licensing*, https://lcb.wa.gov/mjlicense/cannabis-licensing.

We hold the WSLCB acted within its authority when it withdrew VRG's application after conducting a review per RCW 69.50.331(1).

C.      *The WSLCB's Decision to Withdraw VRG's Application Was Not Arbitrary and Capricious*

VRG argues that the WSLCB's decision to withdraw VRG's application was arbitrary and capricious. We disagree.

We review whether an agency decision was arbitrary and capricious de novo. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003). Our Supreme Court has defined arbitrary or capricious agency action as action that "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Port of Seattle¸* 151 Wn.2d at 589 (quoting *Wash. Indep. Tel. Ass'n,* 149 Wn.2d at 26). Agency action "taken after giving a party ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not arbitrary or capricious." *Yow v. Dep't of Health Unlicensed Practice Program*, 147 Wn. App. 807, 830, 199 P.3d 417 (2008).

VRG alleges that the WSLCB's action was arbitrary and capricious because it relied on RCW 69.50.331, RCW 69.50.345, and WAC 314-55-050 as authority to withdraw applications with no explanation for how the statutes empower WSLCB to withdraw VRG's application. However, such allegations are not enough to rise to the level of arbitrary and capricious agency action. The WSLCB considered VRG's arguments, gave VRG an opportunity to be heard, and VRG presented no evidence that suggests that the WSLCB did not act with honesty and upon due discretion.

Therefore, VRG failed to meet its burden of proving arbitrary and capricious action by the WSLCB.

## CONCLUSION

VRG's case is not moot because we may grant it effective relief by ordering the WSLCB to maintain VRG's application as pending. The WSLCB acted within its authority when it withdrew VRG's application. Additionally, the WSLCB's decision to withdraw the application was not arbitrary and capricious. Accordingly, we reverse the superior court order and affirm the Board's Amended Final Order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Veljacic, J.