

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEANDRE LITTLETON, | ) | No. 40261-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF CHILDREN, | ) | |
| YOUTH AND FAMILIES, | ) | |
| | ) | |
| Respondent. | ) | |

MURPHY, J. — DeAndre Littleton appeals from a final order of the Department of

Children, Youth, and Families' (DCYF) Board of Appeals (Board) affirming a founded

finding of physical abuse against a child, R.V.[1] Littleton argues the Board's order lacks

substantial evidence, is arbitrary and capricious, improperly relies on hearsay, and

violates the appearance of fairness doctrine. He also seeks attorney fees under RCW

4.84.350 and RAP 18.1.

We affirm the Board's order and deny Littleton's request for attorney fees.

---

[1] To protect the privacy interests of R.V., a minor, we refer to them by their initials. *See* Gen. Order 2012-1 of Division III, *In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber =2012_001&div=III.

## BACKGROUND

*March 28, 2020, incident*

On March 28, 2020, Child Protective Services (CPS) received a report that Littleton kicked R.V. in the stomach and threw R.V. into a wall during a money-related game. At the time, Littleton and R.V.'s mother, "Denise,"[2] resided together with their infant son, as well as R.V., who is Denise's child from a previous relationship.

*DCYF's investigation*

DCYF investigated the report. CPS social worker Tukcha Kim interviewed R.V. and Denise the following day and observed R.V.'s person. Later, CPS social worker Anita Stewart reinterviewed Denise and spoke with Littleton. Stewart also interviewed R.V.'s biological father and Littleton's mother, Evelyn Murphy.

*DCYF's finding*

DCYF determined the allegations against Littleton were founded based on "the evidence collected and [the information] available at the time of this CPS investigation, law enforcement report, medical records, and interviews." Administrative Record (AR) at 232.

After an internal review, DCYF upheld its decision.

---

[2] We refer to R.V.'s mother by the pseudonym "Denise."

*Administrative hearing*

Littleton requested an administrative hearing to challenge DCYF's finding of abuse. An administrative law judge (ALJ) conducted the hearing via telephone and videoconferencing. DCYF's exhibits included photographs of R.V. Littleton's exhibits included text messages between Littleton and Denise that Littleton contended showed Denise's admissions to her physical abuse of R.V. The parties stipulated to the admission of police reports that were submitted in lieu of testimony from the officers.

*Testimony of Denise*

At the hearing, Denise testified she overheard R.V. ask Littleton to play with him and heard Littleton tell R.V. that he would play if R.V. gave him money. R.V. gave money to Littleton. After rough housing together, Denise heard R.V. ask Littleton for his money back. Denise recalled telling Littleton to give R.V. his money back, but Littleton refused. According to Denise, R.V. grabbed the money from Littleton and ran. Denise heard "a bang and a scream," followed by R.V. crying. Rep. of Proc. (RP) (Jan. 23, 2023) at 26. Denise went into R.V.'s room and saw R.V. on the floor in the fetal position and saw a dresser had been knocked over. Denise testified Littleton walked out of the room smiling and laughing with the money in his hand while R.V. cried on the ground. Denise told Littleton to leave and called R.V.'s biological father to come pick up R.V.

Denise further testified that R.V. told her Littleton kicked R.V. in the stomach and pushed him into the wall and the dresser. Denise observed some bruising and scratches

3

on R.V.'s back. Denise testified R.V. complained about stomach pain that prompted her to take R.V. to the emergency room later that day. A doctor confirmed R.V.'s stomach pain was due to blunt force trauma. R.V.'s stomach pain continued for the next few days, with the bruising lasting one and one-half weeks or more.

### Testimony of Anita Stewart

CPS social worker Stewart, who interviewed Denise and observed Denise's testimony at the hearing, testified that what she heard at the hearing was consistent with what Denise told her during their interview. Stewart also recounted that Littleton denied the allegations when she interviewed him. She testified it was her ultimate determination that Denise's version of events was accurate.

### Testimony of R.V.'s biological father

R.V.'s biological father testified at the hearing. He described arriving at Denise's home to pick up R.V. after Denise contacted him. When he arrived, Littleton was "yelling, screaming, saying cuss words, calling [him] a clown." RP (Jan. 23, 2023) at 53. R.V.'s biological father testified he "saw that [R.V.] was hurt" and observed a scratch and bruise on R.V.'s back. RP (Jan. 23, 2023) at 53. R.V. told his father that he paid Littleton money to play, and when the play ended, R.V. wanted the money back. Littleton took the money, and kicked R.V., causing him to fall and hit a wall. R.V.'s biological father dropped R.V. off at Denise's home later that evening, at which point Denise took R.V. to the emergency room. R.V. continued to report stomach pain and back pain the

following weekend. R.V.'s biological father testified that R.V.

had never made up a story like this, was very honest, and did not lie. Further, R.V.'s

biological father testified he had never witnessed Denise hit R.V.

### *Testimony of Littleton*

Littleton began his videoconference testimony with the parties, and the ALJ noted

background noise and occasional difficulty hearing Littleton. Littleton explained he was

in a semi-open location to obtain internet access. Due to continued disruptions, Littleton

called into the hearing by telephone while maintaining his appearance by video. While

some background noise remained, the parties could hear Littleton. As Littleton continued

to testify, the parties and the ALJ stated when they could not clearly hear Littleton and

requested that he repeat himself or slow down.

Littleton denied all allegations. He testified R.V.'s back injury was caused by

Denise spanking R.V. with a belt the day before. Littleton noticed a welt on R.V.'s back

when R.V. sat down in a chair but Littleton did not say anything about this observation.

Littleton testified that he and Denise had an argument in the early morning of

March 28, 2020, in which Denise alleged Littleton was unfaithful. Littleton left the home,

and Denise threw a wine glass at his back as he left.

Later in the morning, Littleton returned home. Denise was asleep. They continued

their argument when Denise awoke causing R.V. to also wake up. At that point, Littleton

stepped outside and called his mother to come pick him up. When his mother arrived, she

and Littleton entered the apartment so he could pack his things. Littleton denied playing with R.V. or having any physical contact with R.V. on March 28, 2020. After leaving the house, Littleton reported Denise to CPS for spanking R.V., as his mother had advised him to do.

Littleton initially testified he did not find out about the allegation that he had hit and pushed R.V. until law enforcement contacted him on the evening of March 28, 2020. He then testified that he was questioned only about Denise, not about his involvement with R.V. On cross-examination, Littleton testified that law enforcement briefly said something about R.V. and asked whether he hit R.V., but the police primarily questioned him about his argument with Denise. Later, Littleton stated that he did not learn "there was going to be something involving [R.V.], too, with the court" until he received DCYF's founded finding letter. RP (Jan. 23, 2023) at 94. Upon further questioning, Littleton agreed he learned of the allegations involving R.V. on March 28 when he was arrested for the alleged assault.

*Testimony of Evelyn Murphy*

Murphy, Littleton's mother, testified she is a mandatory reporter through her job. When she arrived to pick up Littleton, Denise was screaming and yelling, and "made it very clear that she was upset because [Littleton] had been cheating on her." RP (Jan. 23, 2023) at 115. According to Murphy, Denise did not complain about Littleton physically abusing R.V. Murphy testified R.V. appeared happy and did not complain about stomach

pain, but she observed a "whelp" on the child's lower back that appeared to be an older injury consistent with scabbing. RP (Jan. 23, 2023) at 109, 123. According to Murphy, R.V. told her about being spanked by Denise with a belt the day before. Murphy testified Littleton told her that Denise spanked R.V. Murphy and Littleton saw R.V.'s biological father arrive as they were leaving. R.V.'s biological father told them he was there because Denise called and informed him R.V. had been abused by Littleton.

### Redirect and recross-examination of Denise

DCYF recalled Denise. Denise denied spanking R.V. on March 27, 2020. She also contradicted Littleton's testimony about their argument, stating it was Littleton who accused her of being unfaithful on the morning of March 28, 2020. Denise testified R.V. did not show Murphy a back scratch, and R.V. was scared and crying when Murphy spoke to R.V. Denise further testified R.V. was honest, and she did not tell R.V. to fabricate allegations against Littleton.

## Initial order from the ALJ

After the hearing, the ALJ entered an initial order affirming the finding of physical abuse by Littleton against R.V. The ALJ observed that Littleton and Denise provided conflicting reports as to what occurred on March 28, 2020. Ultimately, however, the ALJ found Denise's account more credible, noting Littleton's testimony did not explain the cause of R.V.'s stomach pain.

*Board of Appeals*

Littleton filed a petition for review with DCYF's Board of Appeals. Littleton

argued Denise's testimony was inconsistent between interviews with the two different

social workers, the police, and in a sworn declaration filed in an unrelated superior court

matter that he attached to his petition. In that declaration, Denise stated that on March 28,

she saw R.V. hold his stomach, groan in pain, and that R.V. told her that Littleton had

kicked him in the stomach. Denise also declared she witnessed Littleton angrily push

R.V. into the wall and saw R.V. groaning in pain after falling into a plastic storage

container.

The Board issued a final order affirming the initial order concluding Littleton

physically abused R.V.

In paragraph 4.20 of its findings of fact, the Board found:

> [Littleton] and [Denise] provided conflicting accounts about what
> happened on March 28, 2020. As such, credibility findings must be made in
> order to determine by a preponderance of the evidence what most likely
> occurred. As used in the Initial Order, witness demeanor and motivation,
> and other situational factors were considered in this de novo review to
> determine credibility. Similar to the credibility findings made in the Initial
> Order, and for the reasons explained in the following paragraphs below, the
> combination of [Denise's] and [R.V.'s] version of events is found to be
> more credible than [Littleton's] version of events.

AR at 7-8. The Board then listed the findings that were substantially based on credibility

determinations and the basis for such findings:

8

4.21 On March 29, 2020, [R.V.] told the Department investigator that when he was in trouble, [R.V.] would be put in time-out for five minutes. [R.V.] stated that he was afraid of [Littleton]. [R.V.] also stated that [Littleton] tried to take [R.V.'s] money from him and that [Littleton] had hit [R.V.] and hurt [R.V.'s] back. [R.V.] denied that anyone other than [Littleton] hit [R.V.]. The Department investigator found R.V. to be healthy and developmentally on track. [R.V.'s] disclosures about what happened have remained consistent.

4.22 On April 10, 2020, [R.V.'s biological father] informed the Department investigator that when he picked [R.V.] up on March 28, 2020, [R.V.] told him that [Littleton] had kicked [R.V.] in the stomach and had pushed him. [R.V.'s biological father] also reported that [R.V.] and [Littleton] would sometimes play in a rough manner. However, [R.V.] had never indicated in the past that [Littleton] had hurt [R.V.].

4.23 At [Littleton's] hearing, [R.V.'s biological father] testified that he thought it was odd that [R.V.] had to pay [Littleton] in order for [Littleton] to play with [R.V. R.V.] told [R.V.'s biological father] that when they were done playing, [R.V.] wanted his money back but [Littleton] refused and pushed [R.V.] into the wall and kicked [R.V.] in the stomach. [R.V.'s biological father] stated that he had observed a scratch on [R.V.'s] back and some bruising. On March 28, 2020, after [R.V.'s biological father] took [R.V.] home, [R.V.] continued to complain about his stomach hurting.

4.24 When [Denise] took [R.V.] to the emergency room because of his complaints about his stomach, the doctor confirmed [R.V.'s] stomach pain was from blunt force trauma.

4.25 While there are some suggestions that [R.V.] exhibited certain behavioral problems at school, they are not sufficient in this case to indicate that [R.V.'s] reporting was dishonest. [R.V.'s] behavioral problems, if any, may very well be related to his ADHD diagnosis. There is also evidence indicating that [R.V.] was an honest child and not prone to lying. Based on these factors, [R.V.'s] consistent disclosures are found to be credible.

4.26 In contrast to the information provided by [R.V.] and [Denise], [Littleton] asserted that the bruise and scratch on [R.V.'s] back right rib area was caused by [Denise] when she spanked [R.V.] However, the credible evidence indicates that [R.V.] complained not only of back pain but of stomach pain as well. This corroborates and supports [R.V.'s] claim

that [Littleton] kicked [R.V.] in the stomach. Additionally, the bruising appears to be consistent with being pushed into an object against the wall.

> 4.27 In his direct testimony, [Littleton] initially denied that the police spoke with him about any incident involving [R.V.]. [Littleton] testified that he did not know about the allegations until he received the Department Founded Finding Letter. However, on cross-examination, [Littleton] reluctantly admitted that he may have discussed [R.V.'s] situation with the police. [Littleton] also acknowledged that he was aware that he had been arrested and charged with assaulting both [Denise] and [R.V.]. The police report indicates that when he was asked, [Littleton] denied having any physical contact with [R.V.]. There is no mention in the police report that [Littleton] accused [Denise] of abusing [R.V.] by spanking [R.V.] the night before the alleged incident relevant to this matter.

AR at 8-10.

In its conclusions of law, the Board determined:

> 5.9 The collective evidence in this case clearly indicates that both [Littleton] and [Denise] were struggling with their relationship. The evidence shows that when providing their respective reports about what happened, both of them had motives to describe their situation and this specific incident of alleged child abuse in a way that shed a positive image upon themselves while casting a negative light on the other.

> 5.10 Based on a totality of the credible evidence, on March 28, 2020, [R.V.] gave [Littleton] money so [Littleton] would play with him. When they were done playing, [R.V.] asked for his money back. [Littleton] refused. When [R.V.] grabbed the money and ran to his room, [Littleton] followed [R.V.]. In retrieving the money, [Littleton] pushed [R.V.] into the wall and kicked [R.V.] in the stomach. In this case, this pushing and kicking are by definition physical abuse. [R.V.'s] injuries were confirmed by the doctor at the emergency room. The injuries to [R.V.'s] back and stomach caused [R.V.] pain and remained with [R.V.] for several days after the incident. [Littleton's] claim that [Denise] caused the bruising and scratching on [R.V.'s] back and right rib area when she spanked [R.V.] the night before is less credible than [Denise's] and [R.V.'s] collective explanation about what happened. Importantly, [R.V.'s] complaint of stomach pain, corroborated by the emergency room medical exam, appears

separate from the bruising on [R.V.'s] back rib area. So, as assumed (arguendo) in the Initial Order, and also here in this de novo review, that [Denise] did cause the bruise on [R.V.'s] back, it does not account for [R.V.'s] stomach pain.

5.11 While some evidence does support [Littleton's] various allegations against [Denise], a preponderance of the credible evidence for this specific allegation of physical abuse of a child indicates that [Littleton] pushed [R.V.] against the dresser and wall, and kicked [R.V.] in the stomach when he was retrieving the money [R.V.] had previously given him. In this case, [Littleton's] actions of pushing and kicking [R.V.] constitute physical abuse of a child.

5.12 Based on a totality of the credible evidence, [Littleton] did physically abuse [R.V.] when he pushed [R.V.] into a wall and kicked [R.V.] in the stomach. As such, the Initial Order upholding the Department's founded finding against [Littleton] of physical abuse of a child should be affirmed.

AR at 13-14. The Board concluded Littleton kicked and pushed R.V., which constituted abuse.

*Judicial review*

Littleton petitioned for judicial review with the superior court. The superior court transferred the case to the Court of Appeals.

ANALYSIS

*Standard of review*

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of the Board's decisions. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 547, 389 P.3d 731 (2017). RCW 34.05.570(3) lists nine grounds on which this

11

court may grant relief from a Board's final order. Littleton relies on two of these grounds arguing: (1) the order is not supported by substantial evidence when viewed in light of the record as a whole, and (2) the order is arbitrary and capricious. RCW 34.05.570(3)(e), (e)(i). The party challenging the agency's action bears the burden of demonstrating the action is invalid. RCW 34.05.570(1)(a).

Substantial evidence is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998) (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). Findings are reviewed for substantial evidence "in light of the whole record." *Yakima Police Patrolmen's Ass'n v. City of Yakima*, 153 Wn. App. 541, 552-53, 222 P.3d 1217 (2009); *see* RCW 34.05.570(3)(e). "We view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority." *Brown v. Dep't of Soc. & Health Servs.*, 190 Wn. App. 572, 593, 360 P.3d 875 (2015). "Doing so necessarily entails accepting the fact finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences." *Id.* at 593-94. We will overturn an agency's findings of fact only if they are clearly erroneous, and we are "definitely and firmly convinced that a mistake has been made." *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994); *Schuh v. Dep't of Ecology*, 100 Wn.2d 180, 183, 667 P.2d 64 (1983). We may uphold a final order as supported by

substantial evidence even if the record contains contrary evidence. *Buechel*, 125 Wn.2d at 201-02.

Importantly, we do not reweigh the evidence or reassess witness credibility. *Richardson v. Dep't of Lab. & Indus.*, 6 Wn. App. 2d 896, 908, 432 P.3d 841 (2018) (reweigh); *Whidbey Env'l Action Network v. Growth Mgmt. Hr'gs Bd.*, 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020) (credibility). In turn, we must "accept the fact finder's determinations of witness credibility and the weight to be given reasonable but competing inferences." *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 418, 216 P.3d 451 (2009). Therefore, an appellant's assertion of some evidence that "may support an inconsistent conclusion" alone does not "'prevent an administrative agency's finding from being supported by substantial evidence.'" *Bowers v. Pollution Control Hr'gs Bd.*, 103 Wn. App. 587, 602 n.15, 13 P.3d 1076 (2000) (quoting *Aviation W. Corp. v. Dep't of Lab. & Indus.*, 138 Wn.2d 413, 429, 980 P.2d 701 (1999)).

We may also grant relief if the agency's order is "arbitrary or capricious." RCW 34.05.570(3)(i). Arbitrary or capricious agency action is defined as action that "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 589, 90 P.3d 659 (2004) (quoting *Wash. Indep. Tel. Ass'n v. Wash. Utils. Transp. Comm'n*, 149 Wn.2d 17, 26, 65 P.3d 319 (2003)). "Where there is room for two opinions, and the agency acted honestly and upon due consideration, this court should not find that an

13

action was arbitrary and capricious, even though this court may have reached the opposite

conclusion." *Id.* at 589. This court should not "undertake to exercise the discretion that

the legislature has placed in the agency." RCW 34.05.574(1).

*Alleged errors related to a lack of substantial evidence*

Littleton contends the Board's credibility determinations lack substantial evidence

when viewed in light of the whole record. He claims that as a result of both Denise and

R.V.'s conflicting versions of events, the Board's failure to identify which version it

relied upon to determine credibility was arbitrary and capricious. Littleton additionally

argues that the Board failed to identify witness demeanor, motivation, and other

situational factors, purportedly considered in arriving at the credibility determination

required by RCW 34.05.461(3). We first address RCW 34.05.461(3) and then move to

Littleton's other arguments.

RCW 34.05.461(3) provides:

> Initial and final orders shall include a statement of findings and
> conclusions, and the reasons and basis therefor, on all the material issues
> of fact, law, or discretion presented on the record . . . Any findings based
> substantially on credibility of evidence or demeanor of witnesses shall be
> so identified. Findings set forth in language that is essentially a repetition
> or paraphrase of the relevant provision of law shall be accompanied by a
> concise and explicit statement of the underlying evidence of record to
> support the findings. . . .

In evaluating whether the Board's findings and conclusions satisfy

RCW 34.05.461(3), "[a]dequacy, not eloquence, is the test." *U.S. West Comm'ns, Inc.*

*v. Wash. Utils. & Transp. Comm'n*, 86 Wn. App. 719, 731, 937 P.2d 1326 (1997)

(noting "the statute does not require that findings and conclusions contain an extensive

analysis.")

The Board's final order acknowledged that it must make credibility findings as

to Denise's and Littleton's versions of events when determining whether abuse occurred.

Findings 4.21 through 4.27 in the final order were based on "witness demeanor and

motivation, and other situational factors" as "explained in the following paragraphs."

AR at 7.

While acknowledging that some of the evidence supported Littleton's allegations

against Denise, the Board noted that R.V.'s "complaint of stomach pain, corroborated by

the emergency room medical exam, appears separate from the bruising on [R.V.'s] back

rib area." AR at 13. The Board concluded Denise's and R.V.'s accounts that Littleton

kicked and pushed R.V. were more credible than Littleton's claim that Denise's actions

caused R.V.'s bruising. The Board reasoned that, even if Denise had caused the bruising

as Littleton stated, Littleton's testimony did not account for R.V.'s stomach pain.

The Board identified its credibility findings and explained the reasons and bases

for the findings in detail. Littleton has not shown how the Board's findings were

insufficient under RCW 34.05.461(3).

We now move to Littleton's challenge that the Board's findings in paragraphs 4.20 through 4.27 are unsupported by substantial evidence when the record is viewed as a whole and are arbitrary and capricious.

*Denise's credibility*

Littleton argues the Board disregarded evidence of Denise's contradictory statements and did not identify which of Denise's contradictory statements it found more credible and why. Littleton focuses on the Board not specifying whether it determined (1) whether Denise did or did not see Littleton push R.V., (2) how and when Littleton got R.V.'s money, (3) how and when R.V. retrieved his money, and (4) which method or methods Denise uses to discipline R.V. While the Board may not have expressly documented which of Denise's accounts was relied upon, the Board did identify the reasons and bases for finding her version of events to be more credible. The Board summarized both Denise's and Littleton's testimonies in its findings of fact. It stated in the final order that Denise and Littleton provided conflicting testimonies about the incident in question. The Board then identified that based on witness demeanor, motivation, and other situational factors, as explained in paragraphs 4.20 through 4.27, that the Board found Denise's version of events more credible than Littleton's when aligned with R.V.'s version of events. The finding is supported by substantial evidence and is not arbitrary and capricious.

*R.V.'s credibility*

Littleton additionally contends the Board's finding that R.V.'s version of events was credible was not supported by substantial evidence and was arbitrary and capricious. He challenges findings 4.21 and 4.24, claiming the Board failed to consider evidence of R.V.'s contradictory statements, and claims the findings are based on inadmissible hearsay.

Hearsay evidence may be admitted by an ALJ "if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452(1); *see also* WAC 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(2). Similarly, the Board may base a finding in its final order "on the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs," even if it would not be admissible in a civil trial. RCW 34.05.461(4). However, a finding cannot be based "exclusively on such inadmissible evidence unless the presiding officer determines that doing so would not unduly abridge the parties' opportunities to confront witnesses and rebut evidence." *Id.* The basis for this determination must be in the order. *Id.* Considering hearsay evidence is within the ALJ's and Board's discretion. *See Yow v. Dep't of Health Unlicensed Prac. Program*, 147 Wn. App. 807, 820, 199 P.3d 417 (2008).

Littleton argues the Board did not identify (1) inconsistencies in R.V.'s version of what occurred on March 28 based on who R.V. spoke to and when, (2) which discipline

was engaged by Denise (spanking versus time-outs), (3) inconsistencies in whether R.V. was afraid of Littleton depending on who R.V. spoke to, (4) inconsistencies in whether R.V. reported harm only by Littleton, or Denise as well, and (5) inconsistencies in R.V. reporting whether anyone other than Littleton hit R.V. Littleton also argues the Board was arbitrary and capricious in determining R.V. was healthy and developmentally on track.

Littleton argues that the Board's findings about R.V. rely solely on hearsay. He claims his ability to question R.V. or Tukcha Kim, the CPS social worker who interviewed R.V., was unfairly limited because neither was called to testify.

Littleton did not object to the evidence of R.V.'s statements as presented at the hearing. On appeal, Littleton does not demonstrate how this evidence was not the sort on which a reasonably prudent person would rely on in conducting their affairs. Littleton admits that Tukcha Kim's report from her interview with R.V. supports the Board's finding. However, he argues the Board ignored the entire record by overlooking R.V.'s conflicting statements. He also contends the Board failed to specify which version of R.V.'s statements it relied on or explain how it determined credibility, as required by RCW 34.05.461(3). In his arguments, Littleton has not demonstrated inconsistencies in R.V.'s disclosures and his arguments are not persuasive.

With regard to the type of punishment R.V. received, whether placed in time-outs or spanked, Littleton argues that R.V. disclosed spankings that were not considered by

the Board in determining inconsistencies in R.V.'s statements. However, even assuming R.V. was spanked, such disclosure does not contradict R.V.'s statement that R.V. would be put in time-outs when in trouble. Being spanked and put in time-outs are not mutually exclusive.

Regarding R.V.'s fear of Littleton, Littleton highlighted that R.V. did not express this fear to Murphy during their conversation on the day of the incident. However, Littleton was present when Murphy spoke to R.V. Therefore, R.V.'s silence on the issue, especially when Littleton was present, does not contradict R.V.'s statement to Kim about fearing Littleton.

Littleton asserts R.V. was inconsistent about how Littleton injured R.V. Littleton argues R.V. only told Denise about the kick to the stomach or stomach pain the day following the incident and did not tell Kim during their interview. Statements made by R.V. to Denise and Kim had different substantive elements, but this does not equate to the statements being contradictory.

Regarding Littleton's contention that R.V. was inconsistent that no one other than Littleton hit R.V., Littleton again points to evidence that Denise spanked R.V. However, even if credible evidence showed R.V. was spanked, the finding by the Board as to what happened on March 28 is supported by substantial evidence. Littleton is asking this court to reweigh evidence and arrive at a decision opposite of that of the Board's credibility

determinations. We decline to engage in the reweighing of evidence as this is not within our purview.

Finally, Littleton claims the Board's finding that, "The Department investigator found [R.V.] to be healthy and developmentally on track," misquotes the record and is arbitrary and capricious. AR at 8. The record, however, shows that CPS social worker Kim documented that R.V. "appeared healthy and developmentally on track." AR at 275. This finding, therefore, is supported by the evidence and is not arbitrary or capricious.

### Credibility of R.V.'s biological father

Littleton challenges the Board's findings that R.V.'s biological father "observed a scratch on [R.V.'s] back and some bruising" and that after taking R.V. home, R.V. continued to complain of stomach pain. AR at 8. Littleton argues that the Board ignored the biological father's alleged inconsistent statements, which cast doubt on his credibility. Therefore, he claims the Board's conclusion that R.V.'s account was consistent and aligned with Denise's version is arbitrary and capricious. While Littleton's argument is not wholly clear, Littleton appears to target R.V.'s biological father's credibility as a means of discrediting the statements attributed to R.V., some of which were relayed through the testimony of R.V.'s biological father. This argument fails on the merits.

At the hearing, R.V.'s biological father testified that he "saw that [R.V.] was hurt" and observed R.V. had a scratch and a bruise. RP (Jan. 23, 2023) at 53. R.V.'s biological

father further testified that R.V. continued to report stomach pain and back pain that day and the following weekend. Therefore, this finding is supported by substantial evidence.

Littleton highlights that R.V.'s biological father did not mention bruising when he spoke to the police. According to the police report, the biological father told the police there was a visible scratch mark on R.V.'s "back/side." AR at 309. This is not inconsistent with the offered testimony. Littleton additionally claims that R.V.'s biological father's testimony, as well as Denise's testimony, was inconsistent with Kim's report that she "did not observe any bruise on his ribcage," and pictures taken of R.V.'s side and back. AR at 275. Kim's report, however, did state R.V. had a "scratch on his right side of the back." AR at 275.

Littleton next challenges R.V.'s biological father's testimony that R.V. continued to complain about stomach pain, arguing he did not convey this information to the police or Kim. Littleton additionally claims R.V.'s biological father and Denise gave different answers as to how long R.V. reported having stomach pain. Littleton fails to show that the Board's acknowledgment of these alleged discrepancies would have affected the Board's credibility findings, or how this was required by RCW 34.05.461(3). Littleton has not shown that the Board's finding that R.V.'s disclosures remained consistent was arbitrary or capricious.

*Finding 4.24, conclusions of law 5.6 and 5.10*

Littleton argues the Board erred by relying on inadmissible hearsay regarding R.V.'s medical care. He argues that, by relying on hearsay, the Board lacked sufficient evidence to support finding 4.24. Littleton makes the argument that finding 4.24 should be struck as it violates RCW 34.05.461(4) in two ways: (1) by relying on hearsay evidence that a reasonably prudent person would not rely upon and (2) by failing to properly determine that the finding, based solely on inadmissible hearsay, did not unduly abridge Littleton's opportunity to confront the witness. With finding 4.24 struck, Littleton argues the trial court erred in entering conclusions of law 5.6 and 5.10.

We disagree. The trial court complied with RCW 34.05.461(4), and Littleton fails to show the hearsay evidence was inadmissible. Therefore, sufficient evidence supported finding 4.24, and the trial court did not err in entering conclusions of law 5.6 and 5.10.

Conclusions of law are reviewed for an error of law. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 391, 687 P.2d 195 (1984). The error of law standard "calls for de novo judicial review of the administrative decisions and allows the reviewing court to essentially substitute its judgment for that of the administrative determination, though substantial weight is accorded [to] the agency's view." *Id.* at 390.

RCW 34.05.461(4) states:

Findings of fact shall be based exclusively on the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding. Findings shall be based on the kind of evidence on *which*

*reasonably prudent persons are accustomed to rely in the conduct of their affairs*. Findings may be based on such evidence even if it would be inadmissible in a civil trial. However, the presiding officer shall not base a finding exclusively on such inadmissible evidence unless the presiding officer determines that *doing so would not unduly abridge the parties' opportunities to confront witnesses and rebut evidence*. The basis for this determination shall appear in the order.

(Emphasis added.)

In finding 4.24, the Board found,

> 4.24 When [Denise] took [R.V.] to the emergency room because of [R.V.'s] complaints about his stomach, the doctor confirmed [R.V.'s] stomach pain was from blunt force trauma.

AR at 9. Based on this finding, the Board concluded, in conclusion 5.10, R.V.'s "injuries were confirmed by the doctor at the emergency room." AR at 13.

Conclusion of law 5.6 states:

> Some of the evidence in this record regarding the allegations of physical abuse was hearsay. . . . Hearsay evidence can be admitted and considered in an administrative hearing as long as "it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their own affairs." An ALJ may give more weight to testimony that provides opportunity for cross-examination by the other parties. However, even if the hearsay is the kind of evidence on which reasonably prudent persons would generally rely, findings of fact may not be based exclusively on hearsay, unless the ALJ determines that considering the evidence would not unduly abridge the parties' opportunities to confront witnesses and rebut evidence. Here, [Littleton] had the opportunity at the hearing to question and contradict the Department's evidence. [Littleton] also presented his own testimony in support of his position.

AR at 11-12.

The Board based finding 4.24 on Denise's testimony that R.V. continuously reported stomach pain after the kick by Littleton and that she took R.V. to the emergency room later that evening. Denise testified that a doctor confirmed R.V.'s stomach pain was caused by blunt force trauma. She also stated that the doctor instructed her to monitor R.V. for any vomiting or confusion. Littleton did not object to this testimony, nor did he challenge Denise's statement regarding the doctor's assessment on cross-examination.[3]

Littleton first argues that the hearsay diagnosis from the doctor is not the type of evidence that a reasonably prudent person would rely on in conducting their affairs. Instead, he contends a reasonably prudent person would want to see documentation. He cites no authority for this assertion and fails to demonstrate that reasonable people do not believe hearsay evidence of a diagnosis unless they see documentation.

Here, Denise's statement of what a medical professional diagnosed and advised for further care is something a reasonably prudent person would rely upon. While the Board acknowledged Denise's testimony was contradicted, it ultimately found Denise's

---

[3] Littleton's counsel objected, based on hearsay, to Denise's earlier testimony regarding what R.V. told her happened on the day of the alleged abuse. The court allowed the hearsay, noting, "[H]earsay can be admissible if it is a type that reasonable persons would attend to in their daily affairs . . . And if parties have reason to or ability to contradict and present their own evidence in, uh, opposition to. So yes, we—we can allow hearsay in these types of hearings. So I will allow the testimony." RP (Jan. 23, 2023) at 28. The ALJ additionally noted, "I think that this is also an excited utterance, so exception to the hearsay rule." RP (Jan. 23, 2023) at 28. Littleton did not, however, object to Denise's testimony regarding the doctor's statements.

and R.V.'s combined testimonies about the subject event to be credible. Further, other evidence supports the fact that Denise took R.V. to the emergency room, and that R.V. had stomach pain after Littleton kicked him.

R.V.'s biological father testified that R.V. reported stomach pain. He also testified that Denise took R.V. to the emergency room on the evening of March 28, 2020. Littleton did not object to R.V.'s biological father's testimony. Additionally, the ALJ admitted a CPS intake report dated March 28, 2020, to which there was no objection. That intake report described that Denise agreed to take R.V. to the emergency room after a CPS social worker advised her a medical provider should examine a child who has been kicked in the stomach.

In addition, the founded finding letter, admitted into evidence by Littleton, stated that the allegation of abuse was founded "[b]ased upon the evidence collected and available at the time of this CPS investigation, law enforcement report, medical records, and interviews." AR at 250. The letter stated, "Ultimately, this assault resulted in [R.V.] needing to seek medical attention. [R.V.] was diagnosed by a medical professional with the following: Soft tissue contusion (a bruise); back contusion, right, initial encounter, Assault, and Blunt trauma to abdomen, initial encounter." AR at 250. Littleton's argument that the letter lacks foundation regarding the founded determination is without merit. He provides no analysis or law to support this argument. Rather, in applying the appropriate standard under RCW 34.05.461(4), the letter, based on CPS's investigation,

25

is evidence a reasonable person would rely on in conducting their affairs. Littleton does not claim otherwise.

Littleton also contends that finding 4.24 is based entirely on inadmissible hearsay evidence and the Board's finding mischaracterizes the statutory requirement. The Board found that Littleton had the opportunity to "question and contradict the Department's evidence. [Littleton] also presented his own testimony in support of his position." AR at 12. Littleton contends that the statute, RCW 34.05.461(4), requires the Board to find that Littleton's opportunity to confront "the" witness not be unduly abridged. Br. of Appellant at 53. He argues that he was denied the opportunity to confront the witness and evidence because the doctor did not testify. This argument fails for several reasons.

First, Littleton fails to show finding 4.24 is based solely on inadmissible evidence. Evidence supporting this finding came from Denise, R.V.'s biological father, the CPS intake report, and the founding finding letter that was admitted into evidence by Littleton. While the evidence of the diagnosis was hearsay, Littleton makes no attempt to show that it was "inadmissible" hearsay. Therefore, his challenge to the sufficiency of the evidence fails. In addition, the statute does not require a finding that the evidence abridged Littleton's opportunity to confront "the" doctor.  Instead, the statute uses more general terms of confronting witnesses and rebutting evidence. *See* RCW 34.05.461(4). Here, Littleton was afforded the opportunity to confront Denise and R.V.'s biological father, as well as provide his own evidence.

Finally, even if we were to determine finding 4.24 was entered in error, Littleton fails to show that the Board's findings were arbitrary and capricious. As DCYF points out, finding 4.15 makes the same finding about R.V.'s diagnosis as was made in finding 4.24, which was not challenged on appeal.[4]

*Littleton's version of events*

Next, Littleton challenges finding 4.27, claiming it is unsupported by the evidence and misstates the record. He argues the Board wrongly concluded he was not credible because of alleged inconsistencies in his testimony about when he learned of the allegation that he harmed R.V.

Finding 4.27 provides:

> In his direct testimony, [Littleton] initially denied that the police spoke with him about any incident involving [R.V. Littleton] testified that he did not know about the allegations until he received the Department Founded Finding Letter. However, on cross-examination, [Littleton] reluctantly admitted that he may have discussed [R.V.'s] situation with the police. [Littleton] also acknowledged that he was aware that he had been arrested and charged with assaulting both [Denise] and [R.V.]. The police report indicates that when he was asked, [Littleton] denied having any physical contact with [R.V.]. There is no mention in the police report [Littleton] accused [Denise] of abusing [R.V.] by spanking [R.V.] the night before the alleged incident relevant to this matter.

---

[4] Finding 4.15 states, "Because [R.V.] continued to complain about his stomach hurting, [Denise] took him to the emergency room later that day. The doctor confirmed that the abdominal pain [R.V.] was suffering from was due to blunt force trauma. [R.V.'s] bruising lasted for over a week and he complained of stomach pain for a couple of days after the incident." AR at 6.

AR at 9-10.

Littleton testified that when law enforcement contacted him on the evening of March 28, he was only questioned about Denise and not about his involvement with R.V. However, on cross-examination, Littleton testified that law enforcement did briefly say something in regard to R.V. and asked whether he hit R.V. Later, he stated that he did not learn that "there was going to be something involving [R.V.], too, with the court" until he received DCYF's founded finding letter. RP (Jan. 23, 2023) at 94. But on further questioning, Littleton agreed that he learned of the allegations involving R.V. on March 28 when he was arrested for the alleged assault.

In his statement to the police at the time of his arrest, Littleton denied having any physical contact with Denise or R.V. Littleton reported that he and Denise argued that morning, that Denise threw a wine glass at him as he left, that Denise woke up and began arguing with him again when he returned, that he called his mother to come pick him up, and that he stayed outside until his mother arrived. There is no mention of Littleton's accusation that Denise spanked R.V. the night before the alleged incident.

The finding is supported by the evidence.

Littleton additionally claims the finding is arbitrary and capricious. He contends that in making this finding, the Board did not act honestly and upon due consideration in the matter because it did not consider Littleton's perspective or the questions that were asked when he gave his answers. This argument is unpersuasive. In his testimony,

Littleton made unclear and contradictory statements as to when he learned of the March 28 allegations against him involving R.V. The Board's finding accurately reflects Littleton's testimony and only concerns Littleton's testimony and what was in the police report. Therefore, the other evidence highlighted by Littleton is irrelevant. He has not shown the finding is arbitrary or capricious.

*Appearance of fairness doctrine*

Littleton claims violation of the appearance of fairness doctrine when the ALJ (1) did not continue the administrative hearing due to difficulty hearing Littleton, and (2) allowed Denise to stay on the line during Littleton's and Murphy's testimonies, but asked Murphy to exit the hearing when she joined early prior to being called as a witness. DCYF urges this court to decline review of these issues as they are raised for the first time on appeal.

The APA generally precludes appellate review of issues not raised below unless one of the following exceptions applies:

> (a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;
>
> (b) The agency action subject to judicial review is a rule and the person has not been a party in adjudicative proceedings that provided an adequate opportunity to raise the issue;
>
> (c) The agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding in substantial compliance with this chapter; or
>
> (d) The interests of justice would be served by resolution of an issue arising from:

> (i) A change in controlling law occurring after the agency action; or
>
> (ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.

RCW 34.05.554(1); *see Darkenwald v. Emp. Sec. Dep't*, 183 Wn.2d 237, 245 n.3, 350 P.3d 647 (2015).

By way of additional background, there was detectable noise coming from the background of Littleton's audio when he began his testimony. Littleton then called into the hearing through a teleconferencing platform. While there was still some background noise, comments from the parties and the ALJ included that Littleton could be heard more clearly. Throughout Littleton's testimony, when he could not be heard, notification of this was raised by the parties and the ALJ. Littleton did not request a recess or continuance.

After Denise testified at the administrative hearing, DCYF asked that Denise be permitted to remain on the teleconferencing platform in the event DCYF sought to recall her. Littleton did not object. The ALJ granted DCYF's request. Later, during Littleton's testimony, Murphy joined the teleconferencing platform before she was called as a witness. The ALJ asked Murphy to leave the platform until she was called to testify. Littleton did not object and did not request Murphy be permitted to remain on the line.

As to each of these issues, Littleton did not object, nor did he raise a concern about these issues with the ALJ or the Board. Littleton seeks to raise these issues for the first

time on appeal, but no exception to RCW 34.05.554(1) applies. We, therefore, decline to review these issues.

## ATTORNEY FEES

Littleton requests attorney fees under RCW 4.84.350(1). Fees are awarded if he prevails and the agency was not substantially justified. *See* RCW 4.84.350(1). Littleton did not prevail and his fee request is denied.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, C.J.

_____
Lawrence-Berrey, J.